UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT RODRIGUEZ and JOVANNY PICHARDO,

                Plaintiffs,                      1:17 Civ. 04344 (JMF)

   -against-

BEN CARSON, in his capacity as the Secretary
of the UNITED STATES DEPARTMENT
OF HOUSING & URBAN DEVELOPMENT;
And the UNITED STATES DEPARTMENT OF
HOUSING & URBAN DEVELOPMENT,

                Defendants.
------------------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR A PERMANENT INJUNCTION
DIRECTING RETROACTIVE ADJUSTMENT OF THEIR RENTAL SUBSIDIES**

EDWARD JOSEPHSON, of counsel
ROOPAL PATEL, of counsel
LEGAL SERVICES – NYC
105 Court Street
Brooklyn NY 11201
Tel. 718.237.5538
*Attorneys for the Plaintiffs*

CASSANDRA CHARLES,
Of counsel to Jeanette Zelhof, Esq.
Mobilization for Justice, Inc.
100 William Street, 6th Floor
New York, NY 10038
Tel. 212.417.3755
*Attorneys for Plaintiffs Robert Rodriguez and Jovanny Pichardo*

1

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** 1

    **I.    HUD FAILS TO ESTABLISH THAT NO FUNDS ARE AVAILABLE FOR THE REIMBURSEMENT OF PLAINTIFFS' OVERPAYMENTS.** 2

**CONCLUSION** 4

# PRELIMINARY STATEMENT

On March 29, 2019, this court granted summary judgment in favor of Plaintiffs Robert Rodriguez and Jovanny Pichardo, holding that HUD had misread the provisions of 42 U.S.C. § 1437f(t), and finding that "by misreading the statute, HUD is requiring two of the Plaintiffs to pay more than the statute says they should have to pay." Upon HUD's refusal to reimburse Plaintiffs for the rent they had overpaid, Plaintiffs moved for an injunction directing HUD to recalculate their rent shares and issue them subsidy credits retroactive to the date of the first unlawful rent charges, and to direct HPD to take whatever measures were necessary to effectuate that result.

HUD now argues that although HPD was allocated $443 million for its voucher program in Fiscal Year 2019, and currently retains over $45 million in a "reserve account," HUD is powerless to direct HPD to expend the approximately $60,000 necessary to make Plaintiffs whole. HUD further argues that nowhere in its vast budget, including over $20 billion for the Section 8 program alone, is there $60,000 in discretionary funding that can be allocated to Plaintiffs without violating the Appropriations Clause of the U.S. Constitution. For the reasons stated below, HUD's arguments are unpersuasive and Plaintiffs' motion should be granted.

### I. HUD FAILS TO ESTABLISH THAT NO FUNDS ARE AVAILABLE FOR THE REIMBURSEMENT OF PLAINTIFFS' OVERPAYMENTS.

HUD does not dispute that due to its misinterpretation of the Enhanced Voucher statute, Plaintiff Robert Rodriguez was compelled to pay approximately $25,000 more than his lawful rent share for the period since November 2016, or that Plaintiff Jovanny Pichardo has overpaid more than $35,000 for the period since November 2011.

HUD admits that HPD was allocated $443 million in Section 8 renewal funding for the fiscal year that terminates in September 2019, and that HPD has retained $45.6 million in "unspent surplus reserve funds from prior calendar years" in an "ACC reserve account." Declaration of Miguel Fontanez, ECF No. 120, pars 13, 20, 21. Indeed, HUD further admits that "a reimbursement paid to a tenant for an improperly calculated tenant rent share would be a permissible use of HPD's HAP funds." *Id*., par. 5; HUD's Memorandum of Law, ECF No. 119, at 13. Because ample funds are admittedly available for the purposes sought by Plaintiffs, HUD's arguments regarding the Appropriations Clause are irrelevant, at least as to the funds already allocated to HPD.[1]

HUD implausibly argues that HUD has "no coercive authority over HPD" that would permit it to direct a reimbursement to Plaintiffs. HUD's Memorandum of Law, ECF No. 119, at 14. This conclusory assertion is belied by HUD's own statements regarding its Annual Contributions Contract (ACC) with HPD. HUD acknowledges that under Section 12 of the ACC contract, it may direct HPD to use funds to remedy inadequate administration of the Section 8

---

[1] HUD, however, has also failed to establish that nowhere in its *$20 billion* Section 8 budget can there be found $60,000 in administrative or discretionary funds that could be used to reimburse Plaintiffs. Nor has HUD explained why, even for the purposes of complying with a court order, it could not extend the deadline for HPD to apply for some of the $100 million set aside for "unforeseen circumstances," whose allocation is not specifically mandated by Congress. *See*, Fontanez Decl., pars 16-18. HUD also does not explain why it could not allocate funds for reimbursing Plaintiffs out of the appropriations for the fiscal year commencing November 2019, which will presumably exceed $60,000. *Id.*, par. 4.

program "in accordance with HUD requirements." *Id.* Although HUD argues that it has made no determination that HPD's administration of its program was inadequate, this court, in effect, has already made that determination by finding that HUD, and HPD at HUD's direction, underpaid Plaintiffs' housing subsidies in violation of the governing statute. Under these circumstances, HUD does not have discretion to make a determination contrary to the court's ruling, and cannot argue that a decision as to whether to direct reimbursement of Plaintiffs from clearly available funds is "HUD's alone." *See, Bhattacharya v. Chicago Housing Authority*, 2017 WL 1197095, at *8 (N.D. Ill. 2017) (HUD "retains the authority to set guidelines for how the public housing projects are to be operated and managed"); *Brighton Village Nominee Trust v. Malyshev*, 2004 WL 594974 (D. Mass. 2004) (directing reimbursement of tenants for "excess rent payments" pursuant to APA).

HUD, moreover, clearly had authority to direct HPD to comply with its new rent calculation procedures by a date certain, with adjustments made retroactive to July 1, 2019. *See*, HUD Memorandum, ECF No. 199, at 8. HUD does not explain why it cannot use that same authority to direct a full retroactive reimbursement for the Plaintiffs.

## CONCLUSION

This court, therefore, should grant Plaintiffs' motion, and enjoin HUD to exercise its authority to direct HPD to reimburse Plaintiffs for all underpaid subsidy amounts, or reimburse Plaintiffs directly using discretionary funding.

Dated: July 17, 2019
New York, New York

Respectfully Submitted,

s/
EDWARD JOSEPHSON, of counsel
ROOPAL PATEL, of counsel
**Legal Services – NYC**
105 Court Street
Brooklyn NY 11201
Tel. 718.237.5538
*Attorneys for the Plaintiffs*


CASSANDRA CHARLES,
Of counsel to Jeanette Zelhof, Esq.
**Mobilization for Justice, Inc.**
100 William Street, 6th Floor
New York, NY 10038
Tel. 212.417.3755
*Attorneys for Plaintiffs Robert Rodriguez and Jovanny Pichardo*