UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
ROBERT RODRIGUEZ, et al., :
:
                      Plaintiffs, :
:
              -v- : 17-CV-4344 (JMF)
:
BEN CARSON, in his official capacity as Secretary of : MEMORANDUM OPINION
Housing and Urban Development, et al., : AND ORDER
:
                      Defendants. :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this case, familiarity with which is presumed, Plaintiffs Robert Rodriguez, Elaine Pinnock, and Jovanny Pichardo challenged the interpretation of Section 8(t) of the United States Housing Act of 1937 ("Housing Act"), codified as amended at 42 U.S.C. § 1437f(t), by the United States Department of Housing and Urban Development ("HUD"). In an Opinion and Order dated March 29, 2019, the Court granted Rodriguez and Pichardo ("Plaintiffs") a declaratory judgment, holding that HUD had indeed misinterpreted the statute and, as a result, was requiring (and had required) them to pay more in rent than federal law mandated. *See Rodriguez v. Carson*, 377 F. Supp. 3d 401 (S.D.N.Y. 2019). On remand, HUD issued "Notice PIH 2019-12" revising and superseding the relevant formula consistent with the Court's interpretation of Section 8(t). *See* Docket No. 108.[1] HUD also advised the New York City Department of Housing Preservation and Development ("HPD") that it was required to revise Plaintiffs' rent calculations by June 29, 2019. Docket No. 108-2. HPD obtained an extension of that deadline, but represented that "any rent

---

[1]    Notice PIH 2019-12 is also available at https://www.hud.gov/sites/dfiles/PIH/documents/PIH-2019-12.pdf.

adjustments pursuant to the new notice would be retroactive to July 1, 2019." Docket No. 119 ("Defs.' Mem."), at 8 n.3.

Notice PIH 2019-12 applies the revised rent formula only prospectively, meaning that neither HUD nor HPD has any plans to reimburse Plaintiffs for their overpayments prior to July 1, 2019. Plaintiffs now seek permanent injunctive relief directing HUD to reimburse them for those past overpayments. *See* Docket No. 113 ("Pls.' Mem."). The facts and legal background relevant to that request are largely set forth in the Court's earlier Opinion. *See Rodriguez*, 377 F. Supp. 3d at 405-08. Of particular relevance here is the Court's holding that Rodriguez and Pichardo "ha[d] been paying . . . more in rent than [they were] required by statute to pay." *Id.* at 412. More precisely, HUD's formula had led to Plaintiffs receiving "enhanced vouchers" worth less than the statute required, forcing them to make up the difference out of their own pockets. *Id.* Plaintiffs have submitted a declaration and exhibits — which Defendants do not dispute — indicating that Rodriguez was thereby forced to pay $25,290 extra in rent and that Pichardo was forced to pay $35,381 extra in rent. *See* Docket No. 112 ("Josephson Decl."), Ex. E. Plaintiffs now seek injunctive relief directing HUD to reimburse those funds.

As all agree, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages,'" and therefore outside the Administrative Procedure Act's (APA) waiver of sovereign immunity for suits against the United State for "relief other than money damages." *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988); 5 U.S.C. § 702; *see* Pls.' Mem. 4; Defs.' Mem. 9. Defendants are right to concede that "[u]nder the APA, an action for specific relief to require the Government to remit money it is statutorily obligated to pay can be maintained." Defs.' Mem. 9. But Defendants argue — indeed, it is their sole basis for opposing the requested relief — that *this* suit for "remittance" is moot in light of *County of Suffolk, New York v. Sebelius*, 605 F.3d 135 (2d Cir. 2010). *See* Defs.' Mem. 9-13.

There, the Court of Appeals held that because the type of equitable action for money contemplated in *Bowen* is limited to "relief that requires a defendant to transfer a specific *res* to the plaintiff," the Constitution's Appropriations Clause — which provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. art. I, § 9, cl. 7 — means that "in cases challenging an agency's expenditure of funds, the *res* at issue" must be "identified by reference to the congressional appropriation that authorized the agency's challenged expenditure." *County of Suffolk*, 605 F.3d at 141. "To seek funds from another source," the Court of Appeals continued, "is to seek compensation rather than the specific property the plaintiff aims to recover," and therefore "falls outside the scope of the waiver of sovereign immunity arising from § 702 of the APA." *Id.* For that reason, "[w]here . . . the congressional appropriations relating to the funds sought by private litigants have been lawfully distributed — and therefore exhausted — by a federal agency, courts lack authority to grant effectual relief in the context of an Article III case or controversy." *Id.* at 138.

*County of Suffolk* compels this Court to conclude that Plaintiffs' reimbursement claims against these Defendants are largely — but not necessarily wholly — beyond the scope of the APA's waiver of sovereign immunity. The evidence before the Court — all of which is undisputed — shows that the relevant appropriations for Fiscal Years 2011-2018 have been exhausted. Defs.' Mem. 11; *see* Docket No. 120 ("Fontanez Decl."), ¶ 11. Moreover, as in *County of Suffolk*, "[t]here is no indication in the record" that in the course of exhausting those appropriations, HUD wrongly or unlawfully distributed or "disregarded any legal obligation to avoid dispensing the funds at issue." 605 F.3d at 142 n.9. Nor did Plaintiffs seek or obtain injunctive relief, preliminary or otherwise, until after those funds had been disbursed. *Cf. City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1427 (D.C. Cir. 1994) (explaining that, under D.C. Circuit precedent, "to avoid having its case mooted, a plaintiff must both file its suit before the relevant appropriation

3

lapses *and* seek a preliminary injunction preventing the agency from disbursing those funds"); *see County of Suffolk*, 605 F.3d at 142 (holding that that same analysis "applies with equal force" even "where a plaintiff attempts, but ultimately fails, to [preliminarily] enjoin an agency's expenditures"). Because Plaintiffs can obtain injunctive relief directing HUD to reimburse them for overpayments made in Fiscal Years 2011-2018 only "from the appropriations that were authorized by Congress for those years," and those appropriations have been exhausted, the Court lacks authority to order much of the relief Plaintiffs seek. *County of Suffolk*, 605 F.3d at 143. [2]

The same may not be not true, however, for Fiscal Year 2019, which began on October 1, 2018 and runs through September 30, 2019. In the first place, it is not clear from the record whether the relevant "HAP renewal funding" appropriated by Congress for Fiscal Year 2019 has been disbursed and exhausted, or merely contractually "obligated." *See* Fontanez Decl. ¶¶ 3-4. The difference may be of some consequence here because, although *County of Suffolk* clearly forecloses relief as to funds that have been "lawfully distributed — and therefore exhausted," 605 F.3d at 138, that rule may not extend (as it does in the D.C. Circuit) to appropriated funds that the agency has merely *obligated*, but not yet disbursed. *Cf. City of Houston*, 24 F.3d at 1426-27. Second, the record reveals another source of appropriated funds that may provide a basis to award relief against Defendants relating to Fiscal Year 2019. The Department of Housing and Urban Development Appropriations Act, 2019 ("2019 HUD Appropriations Act") appropriates $85 million "for . . . enhanced vouchers under any provision of law authorizing such assistance under Section 8(t) of the [Housing] Act." Pub. L. No. 116-6, div. G, tit. II, 133 Stat. 13, 435. Defendants acknowledge that

---

[2]  As Defendants note, Plaintiffs may be able to "seek monetary relief in an action against the City of New York for their alleged rent overpayments. A reimbursement paid to a tenant for an improperly calculated tenant rent share would be a permissible use of a HPD's HAP funds, and HPD may use its ACC reserve funds (approximately $45.6 million as of December 31, 2018) for any purpose consistent with their current year's use of HAP renewal funding." Defs.' Mem. 13 n.4 (citation omitted). The Court need not and does not address that possibility here.

4

appropriation, but insist that it "is for certain vouchers first issued in the calendar year for hardships resulting from certain types of circumstances." Fontanez Decl. ¶ 3. Defendants provide no support for that position, however, and certainly do not explain how it is consistent with the plain language of the 2019 HUD Appropriations Act.

For the foregoing reasons, Plaintiffs' motion for a permanent injunction is DENIED as to the relief sought relating to Fiscal Years 2011-2018. The Court, however, defers decision with respect to Fiscal Year 2019 pending further briefing from the parties. No later than **July 30, 2019**, the parties shall submit supplemental briefs, not to exceed seven pages each (exclusive of any attached supplemental affidavits), addressing the following factual and legal questions:

1) Whether the HAP renewal funding appropriated for Fiscal Year 2019 has been disbursed, not just contractually obligated, *see* Fontanez Decl. ¶ 4, and if so, how much of it;

2) Whether the rule adopted in *County of Suffolk*, 605 F.3d 135, extends to funds contractually obligated but not yet disbursed, *cf. City of Houston*, 24 F.3d at 1426-27;

3) Whether any or all of the Fiscal Year 2019 "TPV" appropriation described in paragraph 3 of the Fontanez Declaration has been disbursed and how much remains; and

4) Whether the 2019 HUD Appropriations Act authorizes the use of such TPV funding for tenants in Plaintiffs' situation, and if not, why not. *See* 133 Stat. at 435 (providing that "$85,000 shall be for . . . enhanced vouchers under any provision of law authorizing such assistance under Section 8(t) of the [Housing] Act").

The Clerk of Court is directed to terminate Docket No. 111.

SO ORDERED.

Dated: July 23, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge