Case 1:17-cv-04344-JMF  Document 124  Filed 07/30/19  Page 1 of 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT RODRIGUEZ, ELAINE PINNOCK, and JOVANNY PICHARDO,<br><br>        Plaintiffs,<br><br>      v.<br><br>BEN CARSON, in his capacity as the Secretary of the UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; the UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; ERIC ENDERLIN, in his capacity as Interim Commissioner for the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION & DEVELOPMENT; and the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION & DEVELOPMENT,<br><br>        Defendants. | 17 Civ. 4344 (JMF) |

## FEDERAL DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION
GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2714
Fax: (212) 637-2686

CASEY K. LEE
Assistant United States Attorney
  *Of Counsel*

## TABLE OF CONTENTS

SUPPLEMENTAL BACKGROUND ................................................................................1

ARGUMENT ....................................................................................................................2

I.     The Second Circuit's Decision in *County of Suffolk* Applies Equally
To Appropriated Funds That Have Been Obligated but Not yet Disbursed ............2

II.    The 2019 Act's Tenant Protection Voucher Funding Cannot Be Used
For Plaintiffs' Requested Relief for Fiscal Year 2019..............................................4

CONCLUSION...................................................................................................................8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Houston v. HUD*,
 24 F.3d 1421 (D.C. Cir. 1994) ................................................................................................ 3

*Corley v. United States*,
 556 U.S. 303 (2009) ................................................................................................................ 6

*County of Suffolk v. Sebelius*,
 605 F.3d 135 (2d Cir. 2010) ............................................................................................ passim

*Salazar v. Ramah Navajo Chapter*,
 567 U.S. 182 (2012) ................................................................................................................ 6

*United States v. McIntosh*,
 833 F.3d 1163 (9th Cir. 2016) ................................................................................................ 6

**Statutes**

42 U.S.C. § 1437f ............................................................................................................................ 6

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13 (2019) ................. passim

HUD Reform Act, 42 U.S.C. §§ 3537a, 3545 ................................................................................ 7

**Other Authorities**

Gov't Accountability Office, *A Glossary of Terms Used in the Federal Budget Process*
 (Sept. 2005) .............................................................................................................................. 4

Gov't Accountability Office, *Principles of Federal Appropriations Law*
 (3d ed. Feb. 2006) ............................................................................................................ passim

Pursuant to the Court's July 23, 2019, Memorandum Opinion and Order ("Opinion" or "Op."), Defendants Secretary Ben Carson, sued in his official capacity, and the United States Department of Housing and Urban Development ("HUD") (together, the "Federal Defendants"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this supplemental memorandum of law in opposition to Plaintiffs Robert Rodriguez and Jovanny Pichardo's ("Plaintiffs'") motion for a permanent injunction.

## SUPPLEMENTAL BACKGROUND

The Court correctly concluded that it lacked authority to order reimbursement or retroactive rent assistance credits for alleged rent overpayments as to fiscal years ("FY") 2011 through 2018, since HUD's appropriations for those years had been disbursed; it denied Plaintiffs' motion as to those years. Op. 4. For FY 2019, the Court deferred decision on the grounds that some part of Congress's housing-assistance-payment ("HAP") renewal appropriation might be obligated but not disbursed, and that the FY 2019 appropriation for tenant-protection vouchers ("TPV") might be an available source of relief. *Id.*

The Court then ordered supplemental briefing on two factual questions: (1) whether HAP renewal funding for FY 2019 has been disbursed (versus obligated), and if so, how much; and (2) whether any or all of the appropriation for TPV funding in FY 2019 has been disbursed (and how much remains). *Id.* at 5. The Court also directed briefing on two legal questions, namely whether *County of Suffolk v. Sebelius*, 605 F.3d 135 (2d Cir. 2010), applies to obligated—but not disbursed—funds; and whether Plaintiffs' demanded relief for FY 2019 is a congressionally authorized use of FY 2019 TPV funding under the 2019 Consolidated Appropriations Act ("2019 Act"), Pub. L. No. 116-6, 133 Stat. 13 (2019). Op. 5.

<u>Remaining HAP renewal funding for FY 2019</u>. The 2019 Act provides that the HAP

renewal appropriation is for "*renewals* of expiring section 8 tenant-based annual contributions contracts," "including *renewals of enhanced vouchers* under any provision of law authorizing such assistance under section 8(t) of the Act." 2019 Act, 133 Stat. at 434 (emphasis added). It goes on to provide, with certain express exceptions (such as the $100 million set-aside), that "the entire amount" of the HAP renewal appropriation "shall be obligated to the public housing agencies based on the allocation and pro rata method" described in that Act. *Id.* Approximately $254 million of HAP renewal funding has been disbursed to HPD. *See* Decl. of Steven Durham ("Durham Decl.") ¶ 3 (July 30, 2019). Regarding HAP renewal funding for all eligible public housing agencies ("PHAs"), as previously noted, HUD has already obligated all renewal funding for approximately 2,200 PHAs through the end of FY 2019. *See id.*; Dkt. No. 120 ("Fontanez Decl.") ¶ 4. About $11.8 billion has been disbursed to PHAs. Durham Decl. ¶ 3.

Remaining TPV funding for FY 2019. The 2019 Act appropriates $85 million for TPV funding, which can be used for "enhanced vouchers under any provision of law authorizing such assistance under section 8(t) of the Act." *See* 2019 Act, 133 Stat. at 435. Unlike the 2019 Act's provisions addressing HAP renewal funding, *id.* at 434, the TPV appropriation paragraph does not contain any language permitting the use of those funds for renewals of enhanced vouchers, *see id.* at 435. Approximately $1.26 million of the TPV appropriation has been obligated; of that amount, all but about $200,000 has been disbursed. Durham Decl. ¶ 4. About $83.7 million of TPV funding remains unobligated. *Id.*

## ARGUMENT

I.   **The Second Circuit's Decision in *County of Suffolk* Applies Equally to Appropriated Funds That Have Been Obligated but Not yet Disbursed**

The Opinion conjectures that the holding in *County of Suffolk v. Sebelius*, 605 F.3d 135 (2d Cir. 2010), "may not extend (as it does in the D.C. Circuit) to appropriated funds that the

agency has merely *obligated*, but not yet disbursed." Op. 4. That distinction is without a difference in this case; Plaintiffs' requests for relief relating to FY 2019 remain moot and should be denied. To start, *County of Suffolk* did not turn on a distinction between appropriated funds that were obligated versus disbursed. Nor did *County of Suffolk* purport to limit its reliance on the D.C. Circuit's decision in *City of Houston v. HUD*, 24 F.3d 1421 (D.C. Cir. 1994)—which the Court recognizes forecloses the type of relief Plaintiffs seek for obligated funds, *see* Op. 4. Rather, the Second Circuit adopted that decision wholesale: "Under *City of Houston*, which *we now follow*, plaintiffs' claims are moot." *Cty. of Suffolk*, 605 F.3d at 142 (emphasis added). And in doing so, the Second Circuit recognized the "'two independent grounds' for dismissing Houston's claims," *id.* (quoting *City of Houston*, 24 F.3d at 1427), one of which was that HUD had "*contractually obligated*" the applicable "appropriation from Congress," *City of Houston*, 24 F.3d at 1427 (emphasis added).

Further, no reasons exist here to distinguish between obligated and disbursed appropriations. The analysis in *County of Suffolk* centered on whether the court could grant "effectual relief," 605 F.3d at 144, which in turned depended on whether the specific *res* was available from funds appropriated by Congress, *id.* at 141-42. Because the at-issue *res* was disbursed and thus no longer available, the plaintiffs' claims were moot. *See id.* But as with "disbursed" funds, "obligated" funds are unavailable for a court to provide specific relief under the APA. "[A]n agency 'uses' appropriations in two basic ways—direct expenditures (disbursements) and obligations." Gov't Accountability Office, 2 *Principles of Federal Appropriations Law* at 7-2 (3d ed. Feb. 2006) [hereinafter "Principles"]. "The major portion of appropriated funds are first obligated and then expended." *Id.* An "[o]bligation" is a "definite commitment that creates a legal liability of the government . . . or a legal duty on the part of the

United States that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States." Gov't Accountability Office, *A Glossary of Terms Used in the Federal Budget Process* 70 (Sept. 2005) [hereinafter "Glossary"]; *see also* 2 *Principles* at 7-3 to 7-4. "An agency incurs an obligation, for example when it . . . signs a contract . . . or takes other actions that require the government to make payments to the public." *Glossary* 70. A "subsequent disbursement" simply "'liquidates' the obligation." 2 *Principles* at 7-2; *accord Glossary* 45 (definition of "disbursements").

In other words, an "obligation" is not merely a present intention to use appropriated funds a certain way; rather, it is a "legal liability of the government" and a "definite commitment" of funds. Accordingly, absent grounds for deeming an obligation unlawful or improper, a court has no basis for undoing an agency's obligation of appropriated funds that would otherwise serve as the source of specific relief. In this instance, the source of Plaintiffs' at-issue *res* for FY 2019 would be the 2019 Act's HAP renewal appropriation, which Congress has mandated "shall be obligated to the [PHAs]" pursuant to a specific formula, 2019 Act, 133 Stat. at 434, and which HUD has already obligated to all eligible PHAs, including HPD. Fontanez Decl. ¶ 4. Plaintiffs have offered no basis to claim that HUD wrongly or unlawfully obligated the HAP renewal funds for FY 2019. Under both *County of Suffolk* and *City of Houston*, that appropriation is unavailable, and Plaintiffs' demand for relief relating to FY 2019 must be dismissed.

II.   **The 2019 Act's Tenant Protection Voucher Funding Cannot Be Used for Plaintiffs' Requested Relief for Fiscal Year 2019**

The Court's Opinion suggests that the 2019 Act's appropriation for TPV funding "may provide a basis to award relief against [the Federal] Defendants relating to Fiscal Year 2019." Op. 4. The Court, however, lacks the power to order such use of the 2019 Act's TPV appropriation. *First*, use of TPV funding for Plaintiffs' requested relief relating to FY 2019 is

4

prohibited under longstanding rules governing the use of appropriations. "It is a well-settled rule that even where an expenditure may be reasonably related to a general appropriation, it may not be paid out of that appropriation where the expenditure falls specifically within the scope of another appropriation." 1 *Principles* at 3-407. "In other words, if an agency has a specific appropriation for a particular item, and also has a general appropriation broad enough to cover the same item, . . . . [i]t must use the specific appropriation." *Id.* at 3-407 to 3-408. Further, "[o]nce an agency has exhausted the specific appropriation, it is not then permitted to begin charging the general appropriation for that purpose unless Congress has specifically authorized it to do so." *Id.* at 3-408. Applying these principles here, the TPV funding appropriation refers to "enhanced vouchers under any provision of law authorizing such assistance under section 8(t) of the [Housing] Act," 42 U.S.C. § 1437f(t). 2019 Act, 133 Stat. at 435. By contrast, the HAP renewal funding appropriation specifies "*renewals* of enhanced vouchers under any provision of law authorizing such assistance under section 8(t) of the Act," 2019 Act, 133 Stat. at 434 (emphasis added); *see also Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 200 (2012) (court must look to the "text of the appropriation" to determine an appropriation's permissible uses). It reinforces this specific focus on enhanced voucher renewals by providing for "any necessary adjustments for the costs associated with the first-time renewal of vouchers under this paragraph" (to the extent a PHA needs additional funding for costs related to the renewal of an enhanced voucher), 133 Stat. at 434, as well as a set-aside appropriation for a PHA to apply for funding "adjustments . . . [for] a significant increase . . . in renewal costs of vouchers resulting from unforeseen circumstances," *id.* at 435. Accordingly, any funding for renewals of enhanced vouchers—*i.e.*, funding for enhanced vouchers after the first year,[1] *see* Durham Decl. ¶¶ 7-13—

---

[1] The 2019 Act requires distributing HAP renewal funds to PHAs largely based on the leasing

must come from HAP renewal funding.  Since the 2019 Act nowhere authorizes use of TPV funding when HAP renewal funding has been exhausted, the fact that HUD has already obligated all HAP renewal funding for FY 2019 offers no basis for granting Plaintiffs relief for FY 2019.

Moreover, even if the Court concluded that neither the HAP renewal nor the TPV appropriation could be construed as more specific than the other, that is no basis for relief.  In such circumstances, "the agency must select which [appropriation] to charge for the expenditure in question."  1 *Principles* at 3-410.  "The agency must continue to use that same appropriation for that purpose unless the agency informs Congress of its intent to change for the next fiscal year."  *Id*.  But here, contrary to any such notice to use TPV funding for enhanced voucher renewals in 2019, HUD's ongoing practice is to fund any enhanced vouchers administrated by a PHA after the first year through HAP renewal funding.  *See* Durham Decl. ¶¶ 6-7.

Further, these appropriations rules conform with statutory construction principles.  A "statute should be construed . . . so that no part will be inoperative or superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314 (2009).  The text also "must be read in [its] context and with a view to [its] place in the overall statutory scheme."  *United States v. McIntosh*, 833 F.3d 1163, 1176 (9th Cir. 2016).  In this case, interpreting the TPV appropriation's reference to "enhanced vouchers" to include funding for "renewals of enhanced vouchers" would render superfluous Congress's use of the term "renewal."  And reading the 2019 Act's TPV appropriation to apply only to newly-issued enhanced vouchers accords with the

---

and cost data for the prior calendar year contained in HUD's Voucher Management System ("VMS").  *See* Durham Decl. ¶ 8.  Any enhanced vouchers issued for the first time during a calendar year would not be funded by the PHA's HAP renewal funding, since that new voucher would not have been recorded in VMS for the prior calendar year.  *See id.* ¶¶ 10-11.  In subsequent years, information for that enhanced voucher *would* be recorded in VMS data for the prior calendar year; by extension, HUD's determination of HAP renewal funding would include funding for the enhanced voucher issued the previous year.  *Id.* ¶¶ 7, 12-14.

2019 Act's funding scheme, whereby the HAP renewal appropriation provides funding for previously issued, but not newly-issued, enhanced vouchers. *See* Durham Decl. ¶¶ 7-13. Given that Congress expressly addressed the topic of costs related to voucher renewals in the HAP renewal appropriation, it makes little sense to read the TPV appropriation to do the same.

*Second*, even assuming for argument's sake that reimbursement of Plaintiffs' alleged rent overpayments in FY 2019 under the enhanced voucher program is an authorized use of TPV funding, *but see supra*, such relief would be "compensation" "from another source" instead of "the specific property the plaintiff aims to recover," and thus "falls outside the scope of the waiver of sovereign immunity arising from § 702 of the APA." *Cty. of Suffolk*, 605 F.3d at 141. The specific res at issue here is rent assistance payments that Plaintiffs allege they were entitled to under the enhanced voucher program in FY 2019. But for tenants such as Plaintiffs, who have been part of the enhanced voucher program for more than one year, funding for their enhanced vouchers comes from HAP renewal funding, not TPV funding. Durham Decl. ¶ 7. Indeed, enhanced voucher funding for both Plaintiffs in 2019 were in fact funded through HAP renewal funding. *Id.* ¶ 14. Put differently, the specific property Plaintiffs seek is additional funds from the HAP renewal appropriation; turning to the TPV appropriation for relief "would function as a substitute remedy to compensate [P]laintiffs" for receiving less HAP renewal funds than they allege they should have received in FY 2019, and constitutes "money damages" that fall outside the ambit of relief permitted under the APA. *Cty. of Suffolk*, 605 F.3d at 143.

*Third*, the TPV appropriation is subject to the strictures of the HUD Reform Act, 42 U.S.C. §§ 3537a, 3545, including (among other things) a written application for relief in a form approved in advance by HUD, *id.* § 3545(a)(4). An injunction directing payment of TPV funding would contravene the written application requirement. *See* Dkt. No. 119 at 13.

7

## CONCLUSION

For the foregoing reasons, as well as those in the Federal Defendants' prior opposition brief, see Dkt. No. 119, the Court should deny Plaintiffs' request for reimbursement of rent overpayments for fiscal year 2019.

Dated: New York, New York
       July 30, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By:   */s/ Casey K. Lee*
CASEY K. LEE
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2714
Fax: (212) 637-2686
casey.lee@usdoj.gov