```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
ROBERT RODRIGUEZ, et al.,                                             :
                                                                      :
                              Plaintiffs,                             :
                                                                      :
             -v-                                                      :     17-CV-4344 (JMF)
                                                                      :
BEN CARSON, in his official capacity as Secretary of                  :     MEMORANDUM OPINION
Housing and Urban Development, et al.,                                :           AND ORDER
                                                                      :
                              Defendants.                             :
                                                                      :
----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In *County of Suffolk v. Sebelius*, 605 F.3d 135 (2d Cir. 2010), the Second Circuit held that the Constitution's Appropriations Clause limits the relief available in an equitable action for reimbursement of funds from the federal Treasury. In particular, the Court held that a plaintiff is limited to reimbursement from the specific appropriation that authorized the original expenditure and may not recover when the original appropriation has been "lawfully distributed — and therefore exhausted." *Id.* at 138. The question presented here, one of first impression, is whether that holding extends to claims for reimbursement directed at appropriated funds that have been contractually obligated to third parties, but not yet disbursed. For the reasons that follow, the Court holds that *County of Suffolk* does not extend that far. Accordingly, and because Defendants' reliance on *County of Suffolk* was their sole ground for resisting an injunction in this case, the Court orders Defendants to reimburse Plaintiffs out of existing appropriated funds notwithstanding the fact that they have already been contractually obligated.

**BACKGROUND**

The Court presumes substantial familiarity with the background of this case, which is set forth in more detail in its Opinion and Order entered March 29, 2019. *Rodriguez v. Carson*, 377 F. Supp. 3d 401 (S.D.N.Y. 2019) ("*Rodriguez I*"). Put briefly, tenants who receive housing assistance pursuant to Section 8 of the United States Housing Act of 1937 ("Housing Act"), brought this suit arguing that Defendant United States Department of Housing and Urban Development's ("HUD") interpretation of one provision of that Act had been requiring them to pay more in rent than the statute prescribed. The Court agreed, and granted two Plaintiffs — Robert Rodriguez and Jovanny Pichardo ("Plaintiffs") — a declaratory judgment to that effect. *See Rodriguez I*, 377 F. Supp. 3d at 412. On remand, HUD revised the relevant formula, but applied the new formula only prospectively — meaning, at least as to Plaintiffs, that no reimbursements for overpayments prior to July 1, 2019, would be forthcoming. *See* ECF No. 108; ECF No. 119, at 8 n.3. Plaintiffs then sought injunctive relief directing HUD to reimburse them for those past overpayments. *See* ECF No. 113. (As discussed below, conventional damages are unavailable because the case was brought under the Administrative Procedure Act, which waives the United States' sovereign immunity only as to actions against federal agencies and officers "seeking relief other than money damages." 5 U.S.C. § 702.)

Significantly, Defendants' "sole basis for opposing the requested relief" was that the Second Circuit's decision in *County of Suffolk* forbade it. *Rodriguez v. Carson* ("*Rodriguez II*"), No. 17-CV-4344 (JMF), 2019 WL 3296961, at *1 (S.D.N.Y. July 22, 2019); *see* ECF No. 119. In a Memorandum Opinion and Order entered on July 22, 2019, the Court agreed with Defendants as to most, but not all, of the disputed funds, holding that *County of Suffolk* foreclosed relief with respect to any overpayments made in Fiscal Years 2011-2018 because

2

HUD had exhausted the relevant appropriations. *See Rodriguez II*, 2019 WL 3296961, at *2. Because it was not clear that the same was true of all funds relating to Fiscal Year 2019, however, the Court reserved decision on Plaintiffs' remaining claims. *Id.* at *2-3. The record, now supplemented by the parties with additional undisputed facts, indicates that HUD has disbursed approximately $11.8 billion of the relevant $20 billion appropriation for Fiscal Year 2019. *Compare* ECF No. 120 ("Fontanez Decl.") ¶ 7, *with* ECF No. 125 ("Durham Decl.") ¶ 3. The remaining funds have been obligated, but not yet disbursed. *See* Durham Decl. ¶ 3.

## DISCUSSION

The Administrative Procedure Act ("APA") waives the United States' sovereign immunity as to actions against federal agencies and officers "seeking relief other than money damages." 5 U.S.C. § 702. As the Supreme Court has explained, however, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as money damages." *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (internal quotation marks omitted). Instead, because the APA authorizes suits against the United States for "the recovery of *specific property or monies*," *id.* at 893 (emphasis added), a plaintiff can recover money pursuant to the APA if that money is "the very thing to which he was entitled," *id.* at 895 (internal quotation marks omitted). Thus, for example, the APA waives sovereign immunity as to a plaintiff's claim for reimbursement of "funds to which a statute allegedly entitles it," but not as to the same plaintiff's claim for "money in compensation for the losses, whatever they may be, that [it] will suffer or has suffered by virtue of the withholding of those funds." *Id.* at 901 (internal quotation marks omitted).

In *County of Suffolk*, the Second Circuit applied these principles in the context of a lawsuit that, like this one, sought an injunction directing reimbursement of funds to which the

3

plaintiff claimed a statutory entitlement.  The Second Circuit explained, first, that Section 702 "only functions as an effective waiver of the government's sovereign immunity to the extent that plaintiffs seek to force [the government] to return property" — that is, a specific *res*.  *County of Suffolk*, 605 F.3d at 140-41.  Noting that the Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. art. I, § 9, cl. 7, meaning that "no money can be paid out of the Treasury unless it has been appropriated by an act of Congress," the Second Circuit held that, "in cases challenging an agency's expenditure of funds, the *res* at issue is identified by reference to the congressional appropriation that authorized the agency's challenged expenditure."  *County of Suffolk*, 605 F.3d at 141 (internal quotation marks omitted).  "To seek funds from another source," the court explained, "is to seek compensation rather than the specific property the plaintiff aims to recover," and would therefore "fall[] outside the scope" of Section 702's waiver of sovereign immunity.  *Id.*  Therefore, in an APA action "[w]here . . . the congressional appropriations relating to the funds sought by private litigants have been lawfully distributed — and therefore exhausted — by a federal agency, courts lack authority to grant effectual relief in the context of an Article III case or controversy."  *Id.* at 138.

Applying *County of Suffolk* to the undisputed facts of this case, the Court previously held that Plaintiffs could not obtain reimbursement for their overpayments in Fiscal Years 2011-2018 because the relevant appropriations for those years have been exhausted.  *Rodriguez II*, 2019 WL 3296961, at *2.  The Court noted, however, that the rule of *County of Suffolk* may not extend (as the D.C. Circuit's similar rule appears to extend) to appropriated funds that the agency has *obligated*, but not yet disbursed.  *See Rodriguez II*, 2019 WL 3296961, at *2 (citing *City of*

4

*Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1426-27 (D.C. Cir. 1994)).[1] That question is now squarely presented because it is undisputed that the appropriated funds from which Plaintiffs could be reimbursed for their Fiscal Year 2019 overpayments have been fully obligated, but not yet fully disbursed. Defendants contend that *County of Suffolk* precludes relief not only from disbursed funds, but also from obligated funds. *See* ECF No. 124 ("Defs.' Suppl. Mem."), at 2-4. In the alternative, they contend that, given the principles underlying the Second Circuit's decision, the distinction between obligated and disbursed funds should make no difference to the analysis. *See id.* The Court disagrees on both scores.

First, *County of Suffolk* does not, by its terms, extend to funds that have been obligated but not yet disbursed. Defendants argue that the *County of Suffolk* court recognized and adopted "two independent grounds" upon which *City of Houston*'s holding rested, Defs.' Suppl. Mem. 3 (quoting *County of Suffolk*, 605 F.3d at 142), "one of which was that HUD had '*contractually obligated*' the applicable 'appropriation from Congress,'" *id.* (quoting *City of Houston*, 24 F.3d at 1427). But a quick glance at *County of Suffolk* debunks that claim. Of course, *City of Houston* recognized that the funds at issue there had been contractually obligated (hence this Court's order directing supplemental briefing on this question). But the "two independent grounds" that the *County of Suffolk* court recognized were that before the plaintiff had brought suit in *City of Houston*, "two events [had] occurred: (1) HUD awarded the funds at issue to other grant

---

[1] On closer inspection, it is not, in fact, even clear that the D.C. Circuit treats obligated funds the same as disbursed funds. In *Population Institute v. McPherson*, 797 F.2d 1062 (D.C. Cir. 1986) — which *City of Houston* cited favorably, *see* 24 F.3d at 1426-27 — the court held that a plaintiff's claim for injunctive relief remained viable (and satisfied the irreparable-harm requirement) precisely because, "[a]lthough the government ha[d] *obligated* [the] funds to other organizations, as yet no money ha[d] been *disbursed*." *Population Inst.*, 797 F.2d at 1081. The Court need not delve more deeply into D.C. Circuit law, however, given that it is bound to follow Second Circuit law.

recipients, thereby exhausting the relevant FY 1986 appropriation; and (2) the FY 1986 appropriation authorizing the grants expired and therefore lapsed." *County of Suffolk*, 605 F.3d at 141. The Second Circuit explained that these two events precluded relief "because the Appropriations Clause prevents additional funds *from being paid out of the Treasury*." *Id.* at 142 (emphasis added). Neither of those two "independent grounds," however, involved the mere *obligation* of appropriated funds.

Defendants are wrong, meanwhile, to place the weight they do on the Second Circuit's statement that it would "follow" *City of Houston*. Defs.' Suppl. Mem. 3; *see County of Suffolk*, 605 F.3d at 142. The Second Circuit stated its holding clearly: that because the "*res* at issue" in a reimbursement suit is the appropriation that authorized the challenged expenditure, *id.* at 141, where those appropriations have "been lawfully distributed — and therefore exhausted — by a federal agency, courts lack authority to grant effectual relief in the context of an Article III case or controversy," *id.* at 138. Indeed, the Second Circuit made clear that its "analysis turn[ed] on the fact that . . . [the agency] had exhausted" the appropriations at issue, *id.* at 142, and even took care to note that its holding was "no broader than the facts of the case before [it]," *id.* at 142 n.9. Given that, the Court does not read the Second Circuit's statement that it would "follow" *City of Houston* to incorporate any more of *City of Houston* than was necessary to support the holding in *County of Suffolk*. And because, in *County of Suffolk*, the Second Circuit confronted a record indicating the relevant funds had been "expend[ed]," *id.* at 141, the Court does not read *County of Suffolk* to decide this case, where the funds have not been expended. *See County of Nassau v. Leavitt*, No. 07-CV-816 (JS), 2009 WL 10703093, at *1 (E.D.N.Y. Mar. 31, 2009) (addressing the contention that the plaintiff's claims were moot "because the grant monies for the [relevant] fiscal years [had] already been paid out"), *aff'd sub nom. County of Suffolk*, 605 F.3d 135.

6

Second, the Court is unpersuaded by Defendants' contention that, even if *County of Suffolk* does not extend to obligated (but undisbursed) funds by its own terms, its logic should yield the same result as a matter of first impression. Defs.' Suppl. Mem. 3-4. Defendants argue that "[t]he analysis in *County of Suffolk* centered on whether the court could grant 'effectual relief'" and that, because "the at-issue *res* was disbursed and thus no longer available, the plaintiffs' claims were moot." Defs.' Suppl. Mem. 3 (citation omitted) (quoting *County of Suffolk*, 605 F.3d at 144). But that holding turned on a straightforward application of the Appropriations Clause. That is, where funds have been expended, "federal courts are without authority to provide monetary relief because the Appropriations Clause prevents additional funds from being paid out of the Treasury." 605 F.3d at 142 (internal quotation marks omitted). That limitation does not apply where, as here, Congress has appropriated funds and those funds are still around; to comply with a court order requiring those funds to be used for reimbursement, no other money would need to be "*drawn* from the Treasury." U.S. Const. art. I, § 9, cl. 7 (emphasis added). In other words, there *is* a crucial difference between obligated and disbursed funds as far as the Appropriations Clause is concerned. The Appropriations Clause is "a restriction upon the *disbursing* authority of the Executive department," which "means simply that no money can be *paid out* of the Treasury unless it has been appropriated by an act of Congress." *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) (emphases added). The fact that HUD may have incurred liabilities in a legal or accounting sense of the term may have significant consequences, including as a matter of contract or statutory law, but those consequences do not implicate the Appropriations Clause. *See Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850) (explaining that the Clause prohibits unauthorized disbursements even where a "judgment of indebtedness" is "entered on the books of the Treasury Department,"

7

leaving the creditor "as far from having a claim on the Secretary . . . to pay" as before the accounting entry was made); *see also Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 425 (1990) (discussing *Reeside*). Put differently, funds that remain in the Government's possession are not "unavailable" as a source of specific relief as far as the Appropriations Clause and *County of Suffolk* are concerned. Other legal or equitable rights may attach to such funds, but that is hardly exceptional when it comes to disputed property — and Defendants have not cited such considerations for denying Plaintiffs relief from the funds that are still available.

## CONCLUSION

In short, neither the Appropriations Clause nor *County of Suffolk* speaks to the question of whether Plaintiffs here are entitled to reimbursement from the Fiscal Year 2019 funds that are not yet expended. There may well be other legal or equitable arguments that would justify denying reimbursement to a plaintiff where, as here, funds have been contractually obligated by a federal agency. Critically, however, Defendants make no such arguments — and, thus, have forfeited them. *See, e.g.*, *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) ("[A] party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate that right or defense."); *McCoy v. Dave & Buster's, Inc.*, No. 15-CV-0465 (JFB), 2018 WL 550637, at *4 n.5 (E.D.N.Y. Jan. 24, 2018) (holding that a party's failure to raise an issue in an opposition brief waives the issue). Put simply, Defendants put all their eggs in the *County of Suffolk* and Appropriations Clause basket, *see Rodriguez II*, 2019 WL 3296961, at *1; *see* ECF No. 119; Defs' Suppl Mem., and, for the reasons stated above, that basket does not suffice for purposes of undisbursed Fiscal Year 2019 funds. Accordingly, the Court concludes that Plaintiffs are entitled to an injunction directing reimbursement for their Fiscal Year 2019 overpayments — that is, their overpayments from October 1, 2018 through June 30,

2019 (after which the new formula took effect).  Plaintiffs' undisputed evidence shows that during that nine-month period, Plaintiff Rodriguez overpaid by $800 per month, while Plaintiff Pichardo overpaid by $886 in October 2018 and $989 per month thereafter.  *See* ECF No. 112-5.  The Court will enjoin Defendants to reimburse Plaintiffs accordingly.

For the foregoing reasons, and to the extent set forth above, Plaintiffs' motion for a permanent injunction is GRANTED.  By separate Order, the Court will enjoin Defendants to remit $7200 to Plaintiff Rodriguez and $8798 to Plaintiff Pichardo within 30 days of the date of this Memorandum Opinion and Order.

SO ORDERED.

Dated: August 14, 2019
      New York, New York

                                            JESSE M. FURMAN
                                           United States District Judge